UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| SURESTE DEVELOPMENT, LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>VILLAGE PARK COMMUNITIES, LLC,<br><br>       Defendant. | Civil Action No. 9:23-cv-1957-RMG |

## COMPLAINT

Plaintiff Sureste Development, LLC ("Sureste") alleges as follows for its Complaint against Defendant Village Park Communities, LLC ("Defendant"):

### NATURE OF THE ACTION

1.  This action seeks redress for Defendant's unlawful attempt to thwart a purchase and sale agreement regarding real property located in this District.

2.  Pursuant to the parties' agreement, Defendant was required to complete certain defined improvements to the property at issue as a condition precedent to closing. When those improvement projects were delayed, Sureste cooperated with Defendant to amend the original agreement to allow Defendant more time to fulfill its obligations.

3.  Despite Sureste's good faith in incurring hundreds of dollars in development costs while waiting for Defendant to complete the required improvements, Defendant has suddenly and unilaterally declared that failure to close within the parties' originally contemplated timeline of one year provides Defendant with grounds to terminate the agreement.

94570571v.4

4. In order to protect against the irreparable harm that Sureste would suffer if the agreement is terminated prior to transfer of the property, Sureste has been forced to bring this action seeking specific performance under the agreement as well as a declaratory judgment that Sureste has not breached the agreement. Accordingly, Sureste asserts claims for specific performance and breach of contract under South Carolina law as well as for declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

## PARTIES

5. Sureste is a Delaware limited liability company maintaining a principal office at 3475 Lenox Road NE, Suite 760, Atlanta, Georgia 30326. Sureste's ownership interests are citizens of Delaware, Florida, New York, and Massachusetts.

6. Upon information and belief, Defendant is a South Carolina limited liability company maintaining a principal office at 4454 Bluffton Park Crescent, Suite 101, Bluffton, South Carolina 29910. Upon information and belief, Defendant may be served with process through its registered agent J. John Cardamone at 4454 Bluffton Park Crescent, Suite 101, Bluffton, South Carolina 29910. On information and belief, the ownership of Defendant is a citizen of South Carolina.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a), because this controversy is between citizens of different states and exceeds the value of $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because Defendant is incorporated and doing business in the State of South Carolina. Venue is proper in the United States District Court for the District of South Carolina, Beaufort Division, pursuant to 28 U.S.C.

2

§ 1391(b)(2), because a substantial part of property that is the subject of the action is situated in this District.

## FACTS COMMON TO ALL COUNTS

### The Agreement at Issue

9. Sureste is a full-service real estate operating company and asset management firm that acquires, develops, manages, and provides capital to middle-market rental communities throughout the Southeast.

10. Defendant agreed to sell and convey a portion of Tax Parcel ID No. R600-013-000-008C-0000 located on Cherry Point Road in Okatie, Beaufort County, South Carolina, including land, improvements, and ancillary property rights (collectively, the "Property") to Sureste for development into multifamily residential units.

11. Sureste and Defendant memorialized the terms of Sureste's purchase of the Property in an Agreement for the Purchase and Sale of Real Property, effective October 14, 2021 (the "PSA"). The PSA is valid and binding. A true and correct copy of the PSA is attached as Exhibit A hereto.

12. The parties executed a First Amendment to the PSA effective January 14, 2022 (the "First Amendment"). The First Amendment is valid and binding.

13. The parties executed a Second Amendment to the PSA on March 14, 2022 (the "Second Amendment"). The Second Amendment is valid and binding.

14. The parties executed a Third Amendment to the PSA on March 16, 2022 (the "Third Amendment"). The Third Amendment is valid and binding. A true and correct copy of the Third Amendment is attached as Exhibit B hereto.

15. The PSA, the First Amendment, the Second Amendment, and the Third Amendment together constitute the entire Agreement between Sureste and Defendant (collectively, the "Agreement"). The Agreement constitutes a valid and binding contract.

### The Parties' Original Timeline

16. The parties' original plan was for the transaction to close and the Property to be conveyed to Surest (the "Closing") within one year of execution of the PSA, *i.e.*, on or before October 14, 2022. (Agreement § 6.1.)

17. Pursuant to the Agreement, Sureste is to pay $3.6 million for conveyance of the Property. (Agreement § 2.)

18. The Agreement contains various milestones for the parties to reach prior to Closing.

19. For example, Sureste was required to transfer a sum of $50,000.00 into escrow as an initial earnest payment within five business days of execution of the PSA, as well as certain additional sums at various other stages prior to Closing (collectively, "Earnest Money"). (Agreement § 3.1.) This deposit was made and confirmed.

20. Meanwhile, Defendant was required to perform certain work on the Property prior to Closing. This included specifically enumerated infrastructure projects to be completed at least 60 days prior to Closing (the "Infrastructure Work"). (Agreement § 14.) The Infrastructure Work was required for Sureste to begin any permitting and civil infrastructure work to develop the property as intended.

21. Indeed, Closing was expressly contingent upon substantial completion of the Infrastructure Work. (Agreement § 7.1.8.)

22. Sureste timely paid its Earnest Money and met all of its other obligations to Defendant under the Agreement with the understanding that Closing would occur on or before October 14, 2022.

**Defendant's Delays Require Adjustment of Original Timeline**

23. Unfortunately, Defendant was delayed in completing various obligations and milestones under the Agreement, including the Infrastructure Work. To date, upon information and belief, the work is still not completed.

24. The parties executed amendments to the Agreement in order to address the change in circumstances stemming from Defendant's delays.

25. The Third Amendment in particular reinforced Defendant's contractual obligation to complete the Infrastructure Work prior to Closing as required under the Agreement. This Amendment addressed the timeline for completing the Infrastructure Work, and required that the completion of the Infrastructure Work would be evidenced by "an operating permit issued by South Carolina Department of Health and Environmental Control and/or Beaufort-Jasper Water and Sewer Authority (the "Operating Permit")." (Third Amendment § 3.)

26. Specifically, the Third Amendment revised Section 14 of the Agreement to include an allowance of additional time for Defendant to complete the Infrastructure Work if Defendant was not able to do so within the originally required timeframe. This would push Closing back accordingly: "In the event [Defendant] does not complete the Infrastructure Work and deliver a copy of the Operating Permit to [Sureste] within sixty (60) days prior to Closing, then the Closing shall occur within sixty (60) days after the date Seller delivers a copy of the Operating Permit to Buyer." (*Id.*) No required Operating Permit has ever been delivered, and upon information and belief, the work has not been completed.

94570571v.4

**The Parties' Mutual Understanding of the New Timeline for Closing**

27. Following execution of the Third Amendment, the parties continued to communicate regarding their respective progress toward completing project milestones under the Agreement.

28. On October 6, 2022, as the originally contemplated date of Closing was approaching, Defendant's counsel emailed counsel for Sureste to inquire about Sureste's progress in obtaining a land disturbance permit ("LDP") from applicable governmental authorities pursuant to Section 7.1.3 of the Agreement.

29. On October 10, 2022, counsel for Sureste responded to Defendant's counsel with confirmation that Sureste had exercised its express right under the Agreement to waive the LDP contingency.

30. In that same October 10, 2022 email, counsel for Sureste stated that Sureste's intention was "to have Closing tied to delivery of the Operating Permit pursuant to the Third Amendment." Sureste's counsel then requested a progress update regarding the Operating Permit.

31. Later that day, Defendant's counsel acknowledged Sureste's waiver of the LDP contingency, stating: "I will let my client know this contingency has been waived." Counsel also indicated that he did not have any update regarding the Operating Permit. A true and correct copy of the email correspondence between the parties' counsel October 6, 2022 through October 10, 2022 is attached as Exhibit C hereto.

32. Counsel for the parties exchanged multiple additional emails between November 2022 and March 2023—well after the originally contemplated Closing date of October 14, 2022—regarding Defendant's efforts to obtain the Operating Permit.

33. As recently as March 14, 2023, Defendant's counsel acknowledged that, pursuant to the Third Amendment, Closing would take place "within 60 days of delivery of the permit." A true and correct copy of the March 14, 2023 email from Defendant's counsel to Sureste's counsel is attached as <u>Exhibit D</u> hereto.

### Defendant's Bad Faith Attempt to Terminate the Agreement

34. Unfortunately, rather than delivering the Operating Permit that Defendant had represented was imminent, (*see* Ex. D), on March 31, 2023, Defendant delivered a purported termination letter to Sureste (the "March 31 Letter"). A true and correct copy of the March 31 Letter is attached as <u>Exhibit E</u> hereto.

35. The March 31 Letter acknowledged that the Third Amendment "modified certain of the requirements regarding [Defendant's] Infrastructure Work deliverables," but claimed that nothing in the Third Amendment modified the deadline for Closing.

36. The March 31 Letter announced that Defendant was "exercising its right to terminate the Agreement based on failure of the Closing of the Agreement to occur within the one-year Closing deadline and pursuant to the provisions of Section 7.1.3."

37. However, as Defendant's own counsel recognized in an October 6, 2022 email Sureste's counsel, termination would not be triggered under Section 7.1.3 unless Sureste had failed to waive the LDP Contingency. (*See* Ex. C.)

38. Moreover, the Closing date could not yet have expired, because by the terms of the Agreement and Defendant's counsel's own admission on March 14, 2023, Closing would occur "within 60 days of delivery of the permit as provided in the last amendment to the purchase and sale agreement." (Ex. D.)

7

39. The March 31 Letter does not cite any provision of the Agreement that allows Defendant to unilaterally terminate the Agreement prior to Closing, because no such provision exists.

40. In fact, in the Agreement Defendant warranted, among other things, that it would "not take any action during the term of this Agreement which would hamper or impede the consummation of this purchase and sale transaction." (Agreement § 8.1.19.)

41. Upon information and belief, Defendant's March 31 Letter represents a bad faith attempt to escape the consequences of Defendant's failure to timely comply with its obligations under the Agreement.

42. Upon information and belief, Defendant seeks to breach the Agreement in order to develop the Property and keep the profits therefrom for itself.

**Sureste's Remedies Under the Agreement**

43. Section 11.1 provides that in the event Defendant breaches any warranty or representation contained in the Agreement, Sureste is entitled to sue Defendant for specific performance.

44. Section 11.1 further provides that in the event specific performance is not available, Sureste is entitled to the immediate return of the Earnest Money, as well as other costs and expenses.

45. In addition, in the event of litigation between Sureste and Defendant pertaining to the Agreement, the losing party shall pay the attorneys' fees and expenses of the prevailing party. (Agreement § 11.4.)

## COUNT I
### (Specific Performance of Contract Terms)

46. Sureste repeats and realleges Paragraphs 1 through 45 of the Complaint, as if fully set forth herein.

47. On October 14, 2021, Defendant entered into the Agreement with Sureste.

48. The Agreement is a valid and enforceable contract.

49. Sureste has complied with all of its duties and obligations under the Agreement.

50. To the extent any additional duties and obligations of Sureste might arise in the course of full performance of the Agreement, Sureste has been and remains able and willing to perform.

51. The subject of the Agreement is the sale of unique real property.

52. Defendant's failure to fully perform under the Agreement would result in irreparable harm to Sureste in the form of loss of unique real property, which loss cannot be compensated financially.

53. Defendant has, to date, failed to fully perform under the Agreement by, *inter alia*, failing to timely complete certain Infrastructure Work contemplated as a condition precedent to Closing under the Agreement.

54. Defendant has further failed to fully perform under the Agreement by seeking to terminate the Agreement rather than complying with its duties and obligations under the Agreement.

55. The Agreement explicitly recognizes the potential for harm to Sureste if Defendant fails to fully perform and the Agreement is not consummated, and in Section 11.1 provides Sureste with the express contractual right to assert a claim for specific performance against Defendant.

56. In light of Defendant's failure to fully perform under the Agreement to allow for transfer of the Property at issue, and in light of Sureste's express contractual right to specific performance of all terms, Sureste is owed an order requiring Defendant to complete performance of all remaining duties and obligations, including but not limited to completion of the Infrastructure Work and conveyance of the Property.

## COUNT II
### (Breach of Contract)

57. Sureste repeats and realleges Paragraphs 1 through 45 of the Complaint, as if fully set forth herein.

58. On October 14, 2021, Defendant entered into the Agreement with Sureste.

59. The Agreement is a valid and enforceable contract.

60. Sureste has complied with all of its duties and obligations under the Agreement.

61. Pursuant to Section 8.1.19 of the Agreement, Defendant represented and warranted that it would not take any action during the term of the Agreement to "hamper or impede the consummation" of the Agreement.

62. However, on March 31, 2023, Defendant purported to terminate the Agreement.

63. Defendant's purported termination of the Agreement was groundless and represents a bad faith attempt to hamper or impede consummation of the Agreement.

64. Defendant's purported termination of the Agreement constitutes a breach of Section 8.1.19 of the Agreement.

65. If specific performance is not available, then pursuant to Section 11.1 of the Agreement, Defendant's breach entitles Sureste to monetary compensation from Defendant in the form of a return of Earnest Money and all other direct and consequential damages flowing from Defendant's breach.

## COUNT III
**(Declaratory Judgment)**

66. Sureste repeats and realleges Paragraphs 1 through 45 of the Complaint, as if fully set forth herein.

67. On October 14, 2021, Defendant entered into the Agreement with Sureste.

68. The Agreement is a valid and enforceable contract.

69. Sureste has complied with all of its duties and obligations under the Agreement.

70. On March 31, 2023, Defendant purported to terminate the Agreement.

71. Termination of the Agreement would cause irreparable harm to Sureste in the form of the loss of a unique piece of real property.

72. Given Defendant's claimed termination, an actual, present, and justiciable controversy has arisen between Sureste and Defendant.

73. A declaratory judgment should be entered in Sureste's favor regarding Sureste's compliance with the Agreement.

74. In order to resolve the factual and legal questions raised by Defendant and to afford relief from the uncertainty and controversy that Defendant's assertions have precipitated, Sureste is entitled to a declaratory judgment of its rights under the Agreement pursuant to 28 U.S.C. § 2201-02.

WHEREFORE, Plaintiff Sureste respectfully requests that this Court enter an Order:

1. Requiring Defendant to perform all remaining obligations under the Agreement as required by the express terms of the Agreement, including Infrastructure Work, Closing, and transfer of the Property to Sureste;

2. Finding that Defendant has breached the express terms of the Agreement;

3. Finding that Sureste has met all obligations to Defendant under the Agreement, and is not otherwise in breach of the Agreement;

4. Requiring Defendant to pay Sureste all damages, costs, and attorneys' fees incurred in relation to the parties' dispute over the Agreement; and

5. Awarding Sureste any and all such other relief as the Court may deem just and proper.

Dated: May 10, 2023                               Respectfully submitted,

GRAYBILL, LANSCHE & VINZANI, LLC

*/s/ Jacob S. Barker*
Jacob S. Barker
Federal Bar No. 10375
S.C. Bar No. 77449
jbarker@glvlawfirm.com
225 Seven Farms Drive
Suite 207
Charleston, SC 29492
Telephone: (843) 628-7732

SEYFARTH SHAW LLP

Rebecca Woods*
rwoods@seyfarth.com
Lauren Gregory Leipold*
lleipold@seyfarth.com
1075 Peachtree Street NE
Suite 2500
Atlanta, GA  30309
Telephone: (404) 885-1500

*\*applications for admission pro hac vice forthcoming*

*Counsel for Plaintiff Sureste Development, LLC*

94570571v.4